UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ERIC GOSS,

       *Plaintiff,*

       -against-

E.S.I. CASES & ACCESSORIES, INC.,

       *Defendant/Counterclaim Plaintiff,*

       -against-

INTERCON DEVELOPMENT, LLC,

       *Counterclaim Defendant.*
-------------------------------------------------------------------X

Docket No. 18 CV 02159
(GBD)(JLC)


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT/ COUNTERCLAIM PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


OVED & OVED LLP
*Attorneys for Defendant/*
*Counterclaim Plaintiff*
401 Greenwich Street
New York, NY 10013
Tel.: 212.226.2376

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT ..................................................................................................................... 14

    I.     ESI IS ENTITLED TO SUMMARY JUDGMENT DISMISSING THE COMPLAINT ................. 14

          A.  Legal Standard ............................................................................... 14

          B.  ESI Established Entitlement to Summary
              Judgment Dismissing the Complaint ........................................... 15

    II.    SUMMARY JUDGMENT ON ESI'S COUNTERCLAIMS MUST BE GRANTED ................... 17

          A.  ESI Established Entitlement to Summary Judgment on the
              Second Counterclaim Against Goss for Acting as a Faithless Servant ........ 17

          B.  ESI Established Entitlement to Summary Judgment
              on the Fourth Counterclaim Against Intercon for
              Aiding and Abetting Goss's Breach of Fiduciary Duty ............................... 19

          C.  ESI Established Entitlement to Summary Judgment as to
              Liability on the First Counterclaim Against Goss for Breach of Contract ... 20

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*135 Bowery LLC v. Beach Channel Shoppers Mart Co., LLC,*
159 A.D.3d 457 (1st Dep't 2018) ..........................................................................19

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)..............................................................................................14

*D'Amico v. City of N.Y.,*
132 F.3d 145 (2d Cir. 1998)............................................................................. 14-15

*Frank v. Reassure Life Ins. Co.,*
2013 U.S. Dist. LEXIS 20508 (Feb. 11, 2013 S.D.N.Y.).......................................15

*Herman v. Duncan,*
2019 U.S. Dist. LEXIS 83009 (S.D.N.Y. May 16, 2019).......................................15

*Hosain-Bhuiyan v. Barr Labs., Inc.,*
2019 U.S. Dist. LEXIS 133537 (S.D.N.Y. Aug. 7, 2019)......................................16

*Iqbal v. Teva Pharms. USA, Inc.,*
2017 U.S. Dist. LEXIS 212740 (S.D.N.Y. Dec. 27, 2017) ....................................16

*Kaufman v. Cohen,*
307 A.D.2d 113 (1st Dep't 2003) ..........................................................................20

*Kulak v. City of New York,*
88 F.3d 63 (2d Cir. 1996)......................................................................................14

*Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.,*
179 F. Supp. 2d 118 (S.D.N.Y. 2000)....................................................................19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)..............................................................................................14

*Matter of Mahn v. Major, Lindsey, & Africa, LLC,*
159 A.D.3d 546, 547 (1st Dep't 2018) ..................................................................18

*Morgan Stanley v. Skowron,*
989 F. Supp. 2d 356 (S.D.N.Y. 2013)....................................................................17

*Nielsen Co. (US), LLC v. Success Sys., Inc.,*
2013 U.S. Dist. LEXIS 38003 (S.D.N.Y. Mar. 19, 2013) ......................................18

*Samba Enters., LLC v. iMesh, Inc.*,
    2009 U.S. Dist. LEXIS 23393 (S.D.N.Y. Mar. 19, 2009) ................................................. 18-19

*SEC v. Franco*,
    253 F. Supp. 2d 720 (S.D.N.Y. 2003).......................................................................................19

*Visual Arts Found., Inc. v. Egnasko*,
    91 A.D.3d 578 (1st Dep't 2012) ...............................................................................................19

*Wright v. Goord*,
    554 F.3d 255 (2d Cir 2009).......................................................................................................14

## Statutes and Codes

Fed. R. Civ. P. 56 .............................................................................................................................1, 14

Defendant/Counterclaim Plaintiff E.S.I. Cases and Accessories, Inc. ("ESI") respectfully submits this memorandum in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order: (i) granting summary judgment dismissing the Complaint, dated March 9, 2018 (the "Complaint") of Plaintiff/Counterclaim Defendant Eric Goss ("Goss") in its entirety, and (ii) granting summary judgment on ESI's First Counterclaim as to liability, and Second and Fourth Counterclaims against Plaintiff and Counterclaim Defendant Intercon Development, LLC ("Intercon") in the amount of $288,919.

## PRELIMINARY STATEMENT

The undisputed facts establish that ESI terminated Goss for cause and, therefore, the Court should dismiss the Complaint. Goss expressly covenanted in his employment agreement with ESI to not engage in any outside business or employment and to devote his full time and best efforts to ESI's business as ESI's vice-president. The Agreement provided that ESI could terminate Goss for cause in the event that Goss violated those covenants or participated in dishonesty, unethical business conduct, or fraud. Goss's own testimony and voluminous documentary evidence, including Goss's admissions to the IRS, undisputedly establish that Goss accepted outside employment and conducted business with at least 10 companies that had no connection to ESI's business for the entire six months of his employment with ESI. Goss also admittedly engaged in dishonesty, unethical business conduct, and fraud by blatantly lying to ESI to hide his misconduct:

> Q Mr. Goss, you've been handed what was marked as Defendant's Exhibit 66. At the top there's an email from you dated October 11, 2017 to Elliot Azoulay. **You write hello Elliot,** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. **Was that a true statement as of October 11, 2017**?
>
> A **No**.

Thus, it is undisputed that Goss's misconduct constituted cause and there is no genuine issue of fact that ESI did not breach the agreement.

The same facts that establish ESI's defense to the Complaint's breach of contract claim also establish that ESI is entitled to summary judgment on its First Counterclaim against Goss for breach of contract as to liability, and on its Second Counterclaim that Goss acted as a faithless servant during Goss's entire period of employment with ESI.  Thus, ESI is entitled to disgorgement of the ███████████████████ to Goss and the ██████████████ Goss earned through his faithless service.   ESI also established entitlement to summary judgment on its Fourth Counterclaim against Intercon for aiding and abetting Goss's breaches of fiduciary duty because it is undisputed that Intercon, Goss's wholly owned and controlled entity, provided Goss with the ability to conduct non-ESI business.   Thus, Intercon is jointly and severally liable for Goss's breaches.

## STATEMENT OF FACTS

### A.   ESI Retains Goss's Company to Act as a Manufacturer's Representative

ESI manufactures and sells electronic devices, such as cellular equipment and accessories, to wholesalers and retail stores.  Declaration of Elliot Azoulay, dated January 29, 2020 ("Azoulay Decl.") ¶ 2.  ESI employs salespersons to sell its products to existing customers, as well as to bring in new customers.  *Id*.  ESI, at times, has also used outside contractors known as "manufacturer's representatives" to facilitate sales and coordinate logistical, pricing, shipment, and other sales details between ESI and its customers.  *Id*.  In the early 2000's, ESI's then-CEO, Elliot Azoulay ("Azoulay") met Goss, who was a one-third owner of and salesperson for Stan Goss & Associates ("SGA"), a company that acts as a manufacturer's representative.  *Id*. ¶ 3.  Over the years, ESI frequently used SGA, specifically through Goss, as a manufacturer's representative to help ESI sell products and generate new customers.  *Id*.  As a manufacturer's representative for ESI, Goss

continuously proved himself to be an effective and determined salesperson.  *Id*.  While working together, Azoulay and Goss developed a close friendship that lasted for nearly 20 years.  *Id*.

**B.     ESI Asks Goss to Leave His Manufacturer's**
**       Representative Business and Work Full Time for ESI**

Goss's diligence and sales ability eventually led Azoulay on December 4, 2016 to ask Goss to work for ESI as a fulltime employee.  Azoulay Decl. ¶ 4.  As a condition of ESI's offer, ESI made clear to Goss that an express condition of Goss' employment with ESI was that Goss needed to devote his full time and best efforts to ESI's business and cease conducting any non-ESI business.  *Id*.  To compensate Goss for giving up his lucrative personal business endeavors, ESI offered ██████████████████████████████████████████████████████████

██████████████████████████████████████  *Id*.  To further induce Goss to refrain from engaging in outside business, ████████████████████████████████

████████████████████  *Id*.  ████████████████████████████████████

██████████  *Id*.

On February 17, 2017, Goss sent Azoulay a draft "Executive Employment Agreement" that ████████████████████████████████████████  Declaration of Glen Lenihan ("Lenihan Decl.") **Ex. F**, § 4; **Ex. E**, Deposition Transcript of Eric Goss ("Goss Tr.") 95:18-96:14.  In the draft agreement, Goss also tried to retrade ESI's offer by including a provision that would have allowed Goss to ████████████████████████████████  and thereby conduct non-ESI business through companies Goss owned.  Lenihan Decl. **Ex. F**, § 3; Goss Tr. 102:4-7 (personal business investments "could be anything from a stock transaction to me owning a company"); Azoulay Decl. ¶ 5.

As Azoulay had previously explained, this was a non-starter for ESI, which required Goss to work exclusively for ESI.  *Id*. ¶ 6.  Making this even clearer, in March 2017, Azoulay provided

Goss with a draft employment agreement that expressly prohibited (i) other employment in any capacity whatsoever; (ii) engagement in any outside business or employment; or (iii) becoming self-employed in any other capacity.  *Id.*; Lenihan Decl. **Ex. G** § 1.

On March 20, 2017, Goss sent Azoulay a redline of ESI's agreement that, once again, included language that would have allowed Goss to conduct non-ESI business by managing his ███████████████████████ Lenihan Decl. **Ex. H**, § 1.  Azoulay, again, explained to Goss that this was not acceptable and that ESI's employment offer specifically prohibited Goss from conducting non-ESI business, including managing any other businesses.  Azoulay Decl. ¶ 8.

On April 26, 2017, Goss sent his March 20, 2017 redline of ESI's agreement to his accountant and wrote that the ███████████████████████████ ██████ *i.e.* ESI.  Lenihan Decl. **Ex. I**.  Notably, Goss's provision that would allow him to ██████████████████████████ and thereby conduct non-ESI business was highlighted as ██████████████:

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

*Id.*

On May 12, 2017, Goss emailed Azoulay another revised version of the agreement, redlined against his earlier March 20, 2017 draft, which now conformed with ESI's employment offer by prohibiting Goss from managing his other businesses while employed by ESI.  Lenihan Decl. **Ex. J**; Azoulay Decl. ¶ 8.  Specifically, Goss ████████████████████████ ████████████████████████████████████ *Id.*  The revised agreement

limited Goss to merely retaining an ownership interest in "Intercon Development" and expressly

prohibited him from engaging in *any outside business or employment*:



*Id.*

C.     <u>**Goss Executes the Agreement and Covenants to Not Engage in Non-ESI Business**</u>

Goss and ESI entered into the Employment Agreement, dated June 19, 2017 (the

"Agreement"), which provided that Goss would begin working as ESI's Vice President on June

19, 2017.  Lenihan Decl. **Ex. K**.  The Agreement set forth Goss's ███████████████ and

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ *Id.* §§ 1, 2, 2.1.  The Agreement

expressly required Goss to ████████████████████████████████ and Goss

expressly covenanted not to engage in any outside business or employment and was limited to only

retaining an ownership interest in "Intercon Development":



██████████████████████████████████████████
███████████████████████████████

*Id.*[1]  Notably, nowhere in the Agreement does it provide that Goss may conduct Intercon business, be employed by Intercon or otherwise operate Intercon (or any other non-ESI business).  Indeed, such acts would violate Goss's covenants to not engage in any outside business and not accept other employment.

The  Agreement  provided  that  ESI  could  terminate  Goss  ██████████████████

███████  Agreement § 7(B).  ████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████

*Id.*  If ESI ████████████████████████████████████████

███████████████████████████████████. *Id.* §§ 8(A), 8(C) (Goss ██████████

████████████████████████████████████████████████

---

[1] The Agreement also provided for ████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████  Agreement §6; Azoulay Decl. ¶ 8, n. 1; Goss Tr. 126:22-127:15; 155:18-156:21.

**D.**     **Goss Immediately Breaches the Agreement by Conducting Non-ESI Business**

Goss eventually admitted at his deposition that he continuously breached the Agreement by being employed by Intercon and engaging in non-ESI business through Intercon while employed by ESI:

> Q Were you employed by anyone else while you were employed by E.S.I.?
>
> A Outside of Intercon Development, no.
>
> Q Did you engage any non-E.S.I. business while you were employed with E.S.I.?
>
> MR. WILLEMIN: I'm going to object.
>
> A Intercon Development.

Goss Tr. 92:25-93:5.  Goss tried to downplay the full nature of his breaches, which permeated his entire employment with ESI in its most material and substantial part, by claiming that the other non-ESI business he conducted was helping Mark Goss, his brother and co-owner of SGA, "transition."[2]  Goss Tr. 93:6-7.  Goss, however, could not explain how hundreds of emails over 77 email chains that did not include Mark Goss, and in which Goss conducted non-ESI business while employed by ESI, helped "transition" Mark Goss into anything.

Indeed, on June 20, 2017 – *Goss's second day of employment with ESI* – Goss began violating the Agreement by conducting non-ESI business by acting as a manufacturer's representative for ██████████████████████████████████████████ ██████████████████████   Lenihan Decl. **Ex. L**; Goss Tr. 173:24-177:3 ("Q. You stated that this was something that is done in the role of a manufacturer's representative; is that correct?  Mr. Willemin: Objection.  A. I said yes.").  Mark Goss is not on the email chain.

---

[2] Notably, nowhere in the Agreement does it allow Goss to "transition" Mark Goss after Goss became employed by ESI.

This was only the start of Goss operating side businesses while employed with ESI.  The record is replete with hundreds of emails between Goss and non-ESI businesses in which Goss engaged in non-ESI business by acting as a manufacturer's representative.  Notably, despite admitting to, at all times, having full access to his SGA email account, Goss did not produce dozens of these emails, and ESI had to obtain them through a subpoena to Sears.  Goss Tr. 59:18-23 (confirming that Goss always had access to his SGA email account).  Lenihan Decl. ¶ 34.

Goss's improper conduct continued unabated during his entire six-months of employment with ESI.  It is undisputed that the companies with whom Goss conducted business in these emails, ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████, are not ESI customers and have nothing to do with ESI's business.  Azoulay Decl. ¶ 10, n.2.  Goss conducted so much non-ESI business that it is not possible to recite each known instance of breach in this brief.  As such, the Court is respectfully referred to the annexed Appendix 1 for a table that summarizes the extensive email communications between Goss and the non-ESI companies for whom Goss was acting as a manufacturer's representative.[3]

The emails set forth in Appendix 1 demonstrate that Goss repeatedly coordinated pricing, ordering, supply, payment and logistical issues for Goss's non-ESI suppliers and customers.[4]  Goss testified that dealing with these issues is the exact job of a manufacturer's representative, *i.e.* Goss's business for decades before joining ESI:

---

[3] The emails are collectively annexed as **Exhibit BB** to the Lenihan Decl.

[4] In addition to communicating by email, Goss's Verizon cell phone records show that, ████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████.  Notably, like his emails, ESI was also forced to obtain Goss's cell phone records by subpoena after Goss failed to produce them.

Q If I understand your testimony, you are telling ███ that something they ordered from ████████████ is on backorder until mid July; is that a fair summary?

A Yes.

Q Is that basically what a manufacturer's representative does? Is that one of the roles of a manufacturer's representative?

A It could be interpreted that that is one of the things that they do, but they are a sales rep.

Q Do they also deal with logistical issues?

A They deal with all issues regarding the customer.

Q That would include canceling orders?

A Everything.

Q Everything involving orders?

A Everything involving the customer.

Goss Tr. 175:24-176:25; *see also id.* 187:2-188:12 (Q What does Intercon do to get paid or compensated, generally speaking? A Sell product. Q When Intercon sends an email to a customer asking them to move the ship date, is that part of selling product? A Yes, it is.").  Thus, pursuant to his own description of a manufacturer's representative, Goss continuously violated his covenant not to engage in outside business by acting as a manufacturer's representative for non-ESI businesses while employed by ESI.

Further evidencing that Goss was engaged in outside business while employed by ESI is Goss's admission to the IRS on ████████████████████████

████████████████████████ Lenihan Decl. **Ex. N**, ln. G (emphasis added).[5]  The Ohio Secretary of State's records demonstrate that Goss did not form "Intercon

---

[5] The definition of "material participation" in the IRS's 2017 Instructions for Schedule C states that "[w]ork you did as an investor in an activity is not treated as participation unless you were directly involved in the day-to-day management or operations of the activity."  Lenihan Decl. **Ex. N** p. 4; *see Brown v. Davis (In re Brown)*, 2019 Bankr.

Development LLC" until August 4, 2017 – six weeks after the start of his employment with ESI – when he filed Intercon's Articles of Organization, with an effective date of August 4, 2017. Lenihan Decl. **Ex. O**.[6, 7] Thus, Goss's ████████████ in Intercon for 2017 necessarily occurred while he was employed by ESI and after Goss covenanted to not ████████████ ████████████ Agreement § 1.



. Lenihan Decl. **Ex. N**.

████████████ *Id.*, ln. 31; **Ex. Q**; Azoulay Decl. ¶ 12.

**E.    In Yet Another Breach, Goss Repeatedly Lies about Conducting Non-ESI Business**

As set forth above, for well over a decade Azoulay had known Goss to diligently work to make sales and generate new business, which is exactly why ESI hired Goss in the first place. Azoulay Decl. ¶ 4.  Goss, however, failed to display any of his prior diligence and determination once he began working for ESI and failed to adequately perform his job duties.   *Id.* ¶ 10; Declaration of Michelle Sirju ("Sirju Decl.") ¶ 3.  Goss did not bring in any new customers, did not make sales to existing customers, routinely took three-hour lunch breaks while working in

---

LEXIS 2596, at *6 n.1 (Bankr. S.D.N.Y. Aug. 16, 2019) (collecting cases, taking judicial notice of IRS instructions for tax form).

[6] ████████████████████████████ Lenihan Decl. **Ex. P**.

[7] The Court may take judicial notice of the Ohio Secretary of State's records.  *See Desclafani v. Pave-Mark Corp.*, 2008 U.S. Dist. LEXIS 64672, at *24 (S.D.N.Y. Aug. 22, 2008) (Taking judicial notice of records kept by Florida Secretary of State); *see also Goldman v. Barrett*, 2017 U.S. Dist. LEXIS 117339, at *1 n.3 (S.D.N.Y. July 25, 2017) (collecting cases, "[t]his Court takes judicial notice of the Pennsylvania Secretary of State's records concerning Quackwatch's formation and dissolution").

ESI's New York office, and was constantly on the phone with his brother Mark when he should have been working.  Azoulay Decl. ¶ 11; Sirju Decl. ¶ 2.  Goss was not even taking the usual steps that a salesperson would take to try to generate sales and bring in new business, such as asking for samples of ESI products to show existing and potential customers.  Azoulay Decl. ¶ 11; Sirju Decl. ¶ 3.  All of this contributed to ESI suspecting that Goss was still conducting his prior businesses.  Azoulay Decl. ¶ 12.  Each time ESI confronted Goss about these suspicions, however, Goss used dishonesty, unethical business conduct, and outright lies to hide his breaches of his covenants to not engage in non-ESI business – which conduct on its own justifies a for-cause termination.  Agreement § 7(B).

For example, Goss was dishonest with ESI concerning Goss's non-ESI business between ██████████████████.  By emails dated September 22, 2017, ████████████████████ ██████████.  Lenihan Decl. **Ex. R**.  ██████████████████████ added Goss to an email with ████████ advised ████████████████████████████ and stated that ████████ ████████████████ *Id.*  ████████ responded by stating, among other things, ████████ ████████████████████ *Id.*  On September 27, 2017, ████████ followed up by emailing Goss, *at both his SGA and ESI email addresses*, with the subject line ████████████ ████████████████████ Lenihan Decl. **Ex. T**.  Goss replied that same day, stating, ████████████████ *Id.*  Later on September 27, 2017, Goss again received an email from ████████ concerning non-ESI business.  Lenihan Decl. **Ex. S**.

The next day, September 28, 2017, Azoulay emailed Goss, attaching ████████ September 27, 2017 email, and wrote, "Eric I am not happy to see this email this is a breach of contract, We need to talk."  Lenihan Decl. **Ex. U**.  Despite having over 30 emails with ████████ in the prior three months, and having received another email from ████████ later that same day, when Azoulay and

Goss spoke about ▮▮▮▮ September 27, 2017 email, Goss claimed that ▮▮▮▮ had "accidentally" sent the email to Goss.  Azoulay Decl. ¶ 10.  The only "accident," however, was ▮▮ sending the email to Goss's ESI email account, in addition to his SGA email account.

On September 28, 2017, Goss sent an email to ▮▮▮ purporting to instruct ▮▮▮ to send all emails ▮▮▮▮▮▮▮ to Goss's brother, Mark Goss.  Lenihan Decl. **Ex. V**.  At the time, Azoulay warily accepted Goss's explanation, but was not totally convinced.  Azoulay Decl. ¶ 10.  The record, however, demonstrates that Goss's purported instruction to ▮▮ was dishonest.  On September 29, 2017, *the day after Goss purportedly told* ▮▮▮▮▮▮ Goss emailed ▮▮▮ from Goss's SGA email account to provide information ▮▮▮ Lenihan Decl. **Ex. W**.  Five days later, on October 4, 2017, Goss again emailed ▮▮▮ from his SGA email address to seek help with ▮▮▮ ▮▮▮▮▮▮ ▮▮. Lenihan Decl. **Ex. X**; Goss Tr. 302:5-303:22.

In the weeks following Goss assuring ESI that the ▮▮▮ email sent to Goss's ESI email address was "an accident," Azoulay remained suspicious.  Azoulay Decl. ¶ 11.  Azoulay's suspicions increased in early October 2017 after Azoulay observed Mark Goss repeatedly calling Goss's cell phone during ESI meetings.  *Id*.  Through emails sent on October 10 and again on October 11, 2017, Azoulay pointedly asked Goss ▮▮▮▮▮▮▮ Lenihan Decl. **Ex. Y**.  On October 11, 2017, Goss responded, ▮▮▮▮▮▮ ▮▮▮▮▮▮ Azoulay Decl. ¶ 11.  It seemed that Goss was conducting non-ESI business in violation of the Agreement, but relying on nearly 20 years of friendship, ESI did not terminate Goss immediately.  *Id*.

As demonstrated by the many emails Goss had sent in which he conducted Intercon business (*see supra*), Goss's statement to Azoulay was false.  Indeed, Goss admitted at deposition that his statement not true:

> Q Mr. Goss, you've been handed what was marked as Defendant's Exhibit 66. At the top there's an email from you dated October 11, 2017 to Elliot Azoulay. ***You write hello Elliot,*** ███████████████████████████. ***Was that a true statement as of October 11, 2017***?
>
> A ***No***.

Goss Tr. 250:18-25 (emphasis added).

## F.     ESI Terminates Goss For Cause

Despite Azoulay's nearly 20-year friendship with Goss and hopes that Azoulay's suspicions did not warrant termination, the evidence that Goss was conducting non-ESI business continued to unfold.  Azoulay Decl. ¶ 12.  Goss was effectively absent from his job by engaging in non-ESI business – which is exactly the issue that Goss's covenant in the Agreement to not conduct outside business was designed to prevent.  *Id.*  Accordingly, on January 11, 2018, ESI decided to terminate Goss for cause.  *Id.*  The next day, ESI ████████████████████ ████████████████████████████████████████  *Id.* ¶ 12; Lenihan Decl. **Ex. Z**.  By letter dated January 15, 2018, ESI ██████████████ Azoulay Decl. ¶ 12; Lenihan Decl. **Ex. AA**.

## G.     Goss Sues ESI for Breach of Contract and ESI Counterclaims to Hold Goss and Intercon Liable for Breach of Fiduciary Duty

Following Goss's termination, Goss filed the Complaint asserting a single cause of action against ESI for breach of contract seeking money damages purportedly based on ESI's alleged improper termination of Goss for cause.  Lenihan Decl. **Ex. A**.  In its Amended Answer, ESI asserts counterclaims, among others, against Goss for breach of contract and acting as a faithless servant in breach of his fiduciary duties and against Intercon for aiding and abetting Goss's breaches of

fiduciary duty.  *Id.* **Ex. B**.  Under the faithless servant doctrine, Goss must disgorge the ████

████████████████████ during his period of faithless service and ████████████ Goss

earned through his faithless service.

**ARGUMENT**

**POINT I**

**ESI IS ENTITLED TO SUMMARY
JUDGMENT DISMISSING THE COMPLAINT**

**A.**     **Legal Standard**

The Court must grant summary judgment where "there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Once a moving party demonstrates entitlement to judgment as a matter of law, the nonmoving

party bears the burden to demonstrate the existence of a genuine issue of material fact.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir 2009)

(opposing party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for

trial'").  The opposing party does not meet its burden by merely relying on allegations or denials

of the moving party's assertions.  *Id.* at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986) (non-moving party must "do more than simply show that there is

some metaphysical doubt as to the material facts"); *see also* Fed. R. Civ. P. 56(c)(1)(A).  Moreover,

"conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat

summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *D'Amico v. City*

*of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998) (opposing party "must offer some hard evidence showing that its version of the events is not wholly fanciful").

**B.**   **ESI Established Entitlement to Summary Judgment Dismissing the Complaint**

The Complaint's sole claim is for breach of the Agreement purportedly because ESI terminated Goss without cause.  ESI has met its burden to establish that the Court should dismiss the Complaint because there is no genuine dispute that ESI terminated Goss for cause and that under the plain language of the Agreement, Goss is not entitled to any severance payments or further compensation.  To prevail on a breach of contract claim, a plaintiff must prove (i) the existence of a contract; (ii) plaintiff's performance; (iii) defendant's breach; and (iv) resulting damages.  *Herman v. Duncan*, 2019 U.S. Dist. LEXIS 83009, at *15 (S.D.N.Y. May 16, 2019).

The Agreement only obligated ESI to █████████████████████████████

█████████████████████   Agreement §§ 8, 8(C).  The Agreement defined ██████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████   Goss's own testimony and documentary evidence establish that Goss's misconduct constituted "cause" under both definitions.

First, Goss's misconduct constituted cause because Goss undisputedly conducted non-ESI business by acting as a manufacturer's representative for the entire six months of his employment with ESI, on well over 100 occasions, for at least 10 companies who had no connection to ESI's business.  Goss admitted to the IRS that he ██████████████████   in Intercon in 2017 after forming Intercon on August 4, 2017 – six weeks after his ESI employment began.  *See Frank v. Reassure Life Ins. Co.*, 2013 U.S. Dist. LEXIS 20508, at *14 (Feb. 11, 2013 S.D.N.Y.) (no genuine dispute that plaintiff engaged in business because, *inter alia*, plaintiff ████████ admitted to the IRS on his Form 1040 that he was "materially participating" in the operation of his business).

Second, Goss admitted at deposition to accepting outside employment with Intercon while working for ESI.  Goss Tr. 92:25-93:5.  Third, Goss participated in dishonesty, fraud, or unethical business conduct by blatantly lying to ESI about Goss's involvement with Intercon – as Goss was forced to admit at deposition.  *Id.* 250:18-25.  Thus, ESI had "cause" to terminate Goss and ESI has no obligations to make further payments to Goss.

In *Iqbal v. Teva Pharms. USA, Inc.*, 2017 U.S. Dist. LEXIS 212740 (S.D.N.Y. Dec. 27, 2017), this Court granted summary judgment dismissing a former employee's breach of contract claim against his employer for failing to pay severance after a disputed for cause termination.  Like here, the plaintiff operated an outside business during his employment, which was the basis for his termination.  In *Iqbal*, the employer's policy provided for termination when an employee engaged in outside employment or interests that "interfere[s] with the ability of employees to satisfactorily perform their job duties."  *Id.* at *10.  Like here, it was undisputed that plaintiff had voluminous email correspondence in which he conducted outside business.  *Id.*  The Court held that because such conduct violated the employer's policies, there was no genuine issue of material fact that the employer terminated plaintiff for cause.  *Id.* at *11.  The Court further held that because the employer's policy did not require severance payments to an employee terminated for cause, plaintiff was not entitled to severance payments.  *Id.* at *17-18; *see also Hosain-Bhuiyan v. Barr Labs., Inc.*, 2019 U.S. Dist. LEXIS 133537 (S.D.N.Y. Aug. 7, 2019) (In a fact pattern substantially similar to *Iqbal*, granting employer summary judgment dismissing former employee's claims for severance "because there is no genuine dispute that [employer] properly terminated Hosain for cause for violating Teva's policies").  Here, Goss's conduct was even more egregious because, unlike the plaintiffs in *Iqbal* and *Hosain* who breached pre-existing employer policies, Goss breached an expressly bargained-for provision that unambiguously prohibited Goss from engaging

in *any* outside business or otherwise being employed, and then admittedly lied to ESI about it– all of which independently constitute "cause."

Accordingly, ESI properly terminated Goss for cause and the Court should grant summary judgment dismissing the Complaint in its entirety.

**POINT II**

**SUMMARY JUDGMENT ON ESI'S COUNTERCLAIMS MUST BE GRANTED**

**A.     ESI Established Entitlement to Summary Judgment on the**
**Second Counterclaim Against Goss for Acting as a Faithless Servant**

Similarly, the same facts that establish ESI's defense to the Complaint's breach of contract claim establish that there is no genuine dispute that Goss acted as faithless servant during Goss's entire six months of employment with ESI.  There are two alternative standards for establishing that an employee acted as a faithless servant.  *Morgan Stanley v. Skowron*, 989 F. Supp. 2d 356, 359-60 (S.D.N.Y. 2013).  The first standard requires a showing that the employee's misconduct and unfaithfulness substantially violated the employment agreement such that it permeated the employee's service in its most material and substantial part.  *Id.*  The second, less stringent, standard requires only that the misconduct rise to the level of a breach of the duty of good faith or loyalty.  *Id.* ("[I]t is sufficient that the employee 'acts adversely to his employer in any part of the transaction, *or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment*'") (internal citations omitted) (emphasis added).  Here, there is no genuine dispute that Goss's conduct of non-ESI business, acceptance of outside employment, and dishonesty in trying to hide his misconduct from ESI satisfies both standards.

ESI has demonstrated that Goss was a faithless servant under the first standard.  ESI established that Goss extensively conducted non-ESI business and participated in outside employment for the entirety of his employment with ESI in breach of the Agreement's express

covenants, and admittedly lied to ESI to cover his tracks. *See* Agreement § 1. Instead of bringing in new customers to ESI, making sales to ESI's existing customers, and otherwise performing his job duties, Goss spent his time conducting business for his own account – reaping a ██████████ ██████ while doing so – all while collecting salary from ESI. This was exactly the harm to ESI that Goss's covenants in the Agreement were designed to prevent. Accordingly, ESI established that Goss's misconduct permeated his service to ESI in its most material and substantial part.

ESI has also demonstrated that Goss was a faithless servant under the second, less stringent standard. ESI established that Goss breached his fiduciary duties to ESI by not only failing to disclose his extensive conduct of outside business and employment, which negatively influenced his ESI job performance, but also by lying to ESI to hide it. *See Nielsen Co. (US), LLC v. Success Sys., Inc.*, 2013 U.S. Dist. LEXIS 38003 at *25-26 (S.D.N.Y. Mar. 19, 2013) ("[A]n employee owes a fiduciary duty to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost faith and loyalty in the performance of his duties"). Accordingly, ESI established that Goss's dishonesty and active concealment of his misconduct, coupled with the harm his misconduct caused ESI ██████████ ███████████████████ ntentionally neglect his job duties in favor of his outside business interests, breached Goss's duty of good faith and loyalty to ESI.

As such, Goss acted as a faithless servant under either standard and Goss must disgorge to ESI the ████████ ████████████████████ during his period of faithless service and ██████████ ████████ earned through his faithless service. *Matter of Mahn v. Major, Lindsey, & Africa, LLC*, 159 A.D.3d 546, 547 (1st Dep't 2018) (disgorgement of salary is a proper remedy against an employee who acted as a faithless servant); *Samba Enters., LLC v. iMesh, Inc.*, 2009 U.S. Dist.

LEXIS 23393, at *23 (S.D.N.Y. Mar. 19, 2009) ("[A] disloyal agent must disgorge any profits made as a result of his breach").

**B.      ESI Established Entitlement to Summary Judgment on the Fourth Counterclaim Against Intercon for Aiding and Abetting Goss's Breach of Fiduciary Duty**

ESI has met its burden to establish that there is no genuine dispute that Intercon aided and abetted Goss's breaches of fiduciary duty.  To prevail on a claim for aiding and abetting a breach of fiduciary duty, a party must establish: (1) a breach of a fiduciary duty; (2) that the aider/abettor knew of that primary breach; and (3) that the aider/abettor substantially assisted in the achievement of that primary breach.  *Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 152 (S.D.N.Y. 2000).  Here, ESI has established each element and, as such, Intercon is jointly and severally liable for damages resulting from Goss's breaches of fiduciary duty and faithless service.  *Visual Arts Found., Inc. v. Egnasko*, 91 A.D.3d 578, 579 (1st Dep't 2012) ("Having been found liable on the aiding and abetting claims, Egnasko's co-defendants are jointly and severally liable for the damages resulting from Egnasko's fraud and breaches of fiduciary duty").

First, as set forth *supra*, there is no genuine dispute that Goss acted as a faithless servant and breached his fiduciary duty to ESI.  Next, it is undisputed that Goss wholly owns and controls Intercon and, thus, Goss's knowledge of his own breaches of fiduciary duty is attributed to Intercon.  *135 Bowery LLC v. Beach Channel Shoppers Mart Co., LLC*, 159 A.D.3d 457, 457 (1st Dep't 2018) (managing member's knowledge imputed to entity that aided and abetted); *see also SEC v. Franco*, 253 F. Supp. 2d 720, 728 (S.D.N.Y. 2003) ("The Court of Appeals for the Second Circuit has held that a person's knowledge can be attributed to a corporation in connection with actions which that person through his control causes the corporation to take").

There is also no genuine dispute that Intercon substantially assisted Goss in breaching his duties to ESI.  *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003) (substantial assistance occurs when "a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur").  As set forth *supra,* Intercon provided Goss with a corporate platform and other resources to conduct his non-ESI business, such as an email address and an entity into which Goss could funnel his ill-begotten profits, all of which affirmatively assisted Goss in breaching his duties to ESI.

Accordingly, this Court should grant ESI summary judgment on its claim for aiding and abetting Plaintiff's breach of fiduciary duty against Intercon.

**C.     ESI Established Entitlement to Summary Judgment as to
Liability on the First Counterclaim against Goss for Breach of Contract**

The same misconduct that establishes ESI's defenses to the Complaint's breach of contract claim, and that establishes that Goss acted as a faithless servant, establishes that there is no genuine dispute that Goss breached the Agreement.  As set forth *supra*, Goss breached in three independent ways: (i) by conducting non-ESI business; (ii) by accepting outside employment; and (iii) by failing to adequately perform his work duties.  Accordingly, ESI is entitled to summary judgment as to liability on its breach of contract counterclaim against Goss.

**<u>CONCLUSION</u>**

For the foregoing reasons, ESI requests that this Court grant this Motion in full and (i) dismiss the Complaint in its entirety; (ii) grant summary judgment on ESI's First Counterclaim as to liability, and Second and Fourth Counterclaims against Plaintiff and Counterclaim Defendant

Intercon in the amount of $288,919; and (iii) grant such other relief as the Court deems just and proper.

Dated: New York, New York
January 31, 2020

/s/ Glen Lenihan
Glen Lenihan, Esq.
Judith L. Swartz, Esq.
OVED & OVED LLP
*Attorneys for Defendant/*
*Counterclaim Plaintiff*
401 Greenwich Street
New York, NY 10013
Tel: 212.226.2376
