USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 29 2020

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ERIC GOSS,

Plaintiff,

-against-

E.S.I. CASES & ACCESSORIES, INC.,

Defendant.

MEMORANDUM DECISION AND ORDER

18 Civ. 2159 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Eric Goss, a former Vice President of Defendant company E.S.I. Cases & Accessories, Inc., (Compl., ECF No. 1 ¶ 4), brings this action against Defendant for breach of contract, seeking declaratory, injunctive, and equitable relief, as well as monetary damages, (*Id.* at 4). Defendant asserts four counterclaims against Plaintiff—breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and misappropriation of confidential information and trade secrets. (Am. Answer and Affirmative Defenses with Countercls. ("Answer and Countercls."), ECF No. 61 ¶¶ 18–40.) Defendant also asserts one counterclaim against Intercon Development, LLC[1] ("Intercon") for aiding and abetting Plaintiff's alleged breach of fiduciary duty. (*Id.* ¶¶ 41–45.)

Pending before this Court are the parties' cross-motions for summary judgment. (*See* Notice of Mot. for Summ. J., ECF No. 91; Notice of Motion in Supp. of Def./Countercl. Pl.'s Mot. for Summ. J., ECF No. 93.) Specifically, Defendant moves this Court to dismiss Plaintiff's complaint and grant summary judgment in its favor on its counterclaims for (1) breach of contract against

[1] Intercon was not initially a party to this action. Because of Defendant's counterclaim against Intercon, it is now identified on the docket as a Counter-Defendant.

Plaintiff; (2) its second counterclaim against Plaintiff "for acting as a faithless servant"; and (3) its counterclaim against Intercon for aiding and abetting breach of fiduciary duty. (*See* Mem. of Law in Supp. of Def./Countercl. Pl.'s Mot. for Summ. J. ("Def.'s Mem. in Supp."), ECF No. 94 at 14–20.) Plaintiff and Counter-Defendant Intercon move this Court to dismiss all of Defendant's counterclaims. (*See* Mem. of Law in Supp. of Pl. and Counterl. Def.'s Mot. for Summ. J. ("Pl.'s Mem. in Supp."), ECF No. 92 at 10–22.) Plaintiff's claim for breach of contract is DISMISSED. Additionally, each of Defendant's counterclaims is DISMISSED.

## I. FACTUAL BACKGROUND

Plaintiff, through his Company Stan Goss & Associates, Inc. ("SGA"), began working for Defendant in the early 2000's. (*See* Local Rule 56.1 Counter-Statement of Undisputed Material Facts in Opp'n to Pl.'s and Countercl. Def.'s Mot. for Summ. J. ("Rule 56.1 Counter-Statement"), ECF No. 106 at 1.) Years later, the parties began engaging in discussions regarding an employment agreement for Plaintiff to work with Defendant on a full-time basis. (*Id.* at 2.) The parties "exchanged numerous drafts" of the agreement "throughout the summer of 2017," agreed on a wide range of terms, and ultimately executed an employment agreement on June 19, 2017. (*Id.* at 3.)[2] One of the terms prohibited Plaintiff from engaging in outside employment or other business, but permitted him to retain ownership in Intercon—a company wholly owned by Plaintiff. (*Id.* at 4.) Notably, the employment agreement did not expressly define the prohibited phrases "engaging in outside employment" or "other business." (*Id.*) According to Plaintiff, this provision caused him to request that the contract span over multiple years, as he was "apprehensive about divesting himself from his primary source of income," which until that point, was gained through his work at Intercon

[2] Specifically, the employment agreement provided, among other things, that Plaintiff would receive a salary of $400,000.00, with the possibility of various performance bonuses. (Feb. 25, 2019 Letter, Ex. 2 ("Employment Agreement"), ECF No. 33-1 at 1–2.)

and SGA. (*Id.* at 2.) The parties agreed that the employment agreement would cover a period of five years. (*Id.* at 3.)

The employment agreement further indicated that Defendant may terminate Plaintiff solely "for cause," which covers, *inter alia*, "[any] violation of any of the covenants" of the employment agreement. (*Id.* at 6; *see also* Employment Agreement at 3.) Additionally, should Defendant terminate Plaintiff without cause, Defendant was required to pay Plaintiff (1) severance, (2) a pro-rata share of any bonus, (3) accrued and unused vacation time, and (4) the reimbursement of certain expenses for 18 months. (Employment Agreement at 4–5.)

Pursuant to the terms of the employment agreement, Plaintiff alleges that he "transferred his entire ownership of SGA to his brother, Mark Goss," but "did not divest himself from his ownership in Intercon, as he was permitted to retain his ownership interest per the Employment Agreement." (*See* Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem. in Opp'n"), ECF No. 108 at 4.) Plaintiff did, however, hire his brother "to manage and operate Intercon while he was employed at ESI." (*Id.*) According to Plaintiff, he also informed his top clients at both SGA and Intercon "that he was transitioning all of his . . . business to Mark Goss." (*Id.*)

Defendant terminated Plaintiff pursuant to a termination letter dated January 15, 2018. (Rule 56.1 Counter-Statement at 12.) Elliot Azoulay, Defendant's owner and Chief Executive Officer, indicated in the termination letter that Plaintiff was being terminated "for cause." Specifically, Defendant argues that it fired Plaintiff based on its discovery that Plaintiff continued to engage in his business with both Intercon and SGA. (Def.'s Mem. in Supp. at 15–17.) Defendant therefore has not paid Plaintiff severance or any of the other funds to which Plaintiff would be entitled if he was fired without "cause." (Rule 56.1 Counter-Statement at 12–13.) Plaintiff argues

that he was not terminated for "cause" and therefore, the termination violated the parties' employment agreement and thereby triggered his entitlement to severance benefit. (*Id.*)

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when "it 'might affect the outcome of the suit under the governing law.'" *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's

favor. *See Niagara*, 315 F.3d at 175. However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (internal citations omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

The standard for cross-motions for summary judgment is the same: a court will "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010) (quoting *Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002)).

## III. PLAINTIFF BREACHED THE EMPLOYMENT AGREEMENT

### A. Defendant's Counterclaim for Breach of Contract is Granted, and Plaintiff's Claim for Breach of Contract is Dismissed.

Based on the evidence in the record, Plaintiff breached his contract with Defendant by continuing to conduct business outside of his work with Defendant. Defendant had cause to terminate Plaintiff based on Plaintiff's failure to comply with their contract. Plaintiff's assertions that his work with companies other than Defendant was "transition[al]" and was focused around ensuring that his brother was capable of handling the business is contradicted by the evidence. Indeed, Defendant provides a myriad of emails spanning from June 2017 through January 2018—*i.e.*, the entire span of his employment—between Plaintiff and representatives of other companies, wherein Plaintiff handled work for those companies. (*See* Decl. of Glen Lenihan in Supp. of Def./Countercl. Pl.'s Mot. for Summ. J., Ex. BB (Copies of Goss Emails), ECF No. 97-28.) Specifically, the evidence demonstrates that Plaintiff engaged in coordinating pricing, ordering, supply, payment, and logistical issues for non-ESI customers. (*See id.*)

The evidence does not demonstrate that Plaintiff informed Intercon or SGA's clients that they should communicate solely with his brother in the future. (*See id.*) Despite the fact that the employment agreement does not clearly define what constitutes "engaging in outside employment," it strains logic to assert that the information and communications in the record would not constitute working for outside companies in violation of the employment agreement. Moreover, while Plaintiff argues that during his employment with Defendant, he engaged in only "transition work" for Intercon and SGA, and that any communications to which Defendant now points demonstrate this "transition work," (*see* Tr. of Oral Arg. dated Aug. 11, 2020 ("Tr. of Oral Arg."), ECF No. 127 at 66:24–67:2; 67:16–17), he does not point to anything in the employment agreement that leaves open an exception for this type of labor. Plaintiff also argues that the work, even if it did violate the agreement, was "*de minimus*" because he did not spend more than two minutes per day on average working for the other companies. (Pl.'s Mem. in Opp'n at 14–15.) Again, Plaintiff does not point to any provision in the agreement that grants an exception for a few minutes of work per day.

Plaintiff alleges that Defendant did not terminate him for "cause," but instead that he terminated him because of "an inconsequential disagreement," as reflected in a text message thread. (*See id.* at 10–11.) Regardless, however, Plaintiff is unable to demonstrate that the fact that he was engaging in outside business—in violation of the employment agreement—did not provide a justification for Defendant's decision to terminate Plaintiff. Defendant was aware of Plaintiff's activity at the time that the two engaged in discussions through text messages about Plaintiff's outside work. Based on the evidence in the record, Plaintiff was clearly providing work for other companies, Defendant was aware of this, and Defendant subsequently terminated Plaintiff. Defendant therefore had reason—that is, "cause"—to terminate Plaintiff.

### B. The Employment Agreement Outlines the Appropriate Relief.

The language contained in the employment agreement is controlling when assessing the damages to which Defendant is entitled. While Plaintiff's breach of contract claim is dismissed, Defendant has not made a separate showing that it is entitled to a judgment in its favor on its breach of contract counterclaim. Through this Court's dismissal of Plaintiff's breach of contract claim, Defendant is receiving the remedy to which it is entitled—that is, a determination that Plaintiff is not entitled to severance or any of the other funds covered in the employment agreement for termination without "cause." Defendant has not demonstrated that it is entitled to damages, or any relief beyond dismissal of Plaintiff's claim, and does not point to anything in the employment agreement to demonstrate otherwise.[3]

## IV. DEFENDANT'S REMAINING COUNTERCLAIMS AGAINST PLAINTIFF AND INTERCON ARE DISMISSED

The parties bring cross-motions for summary judgment regarding Defendant's remaining counterclaims. (*See* Notice of Mot. for Summ. J.; Notice of Motion in Supp. of Def./Countercl. Pl.'s Mot. for Summ. J.) In addition to its counterclaim for breach of contract, Defendant also brings counterclaims for (1) breach of the implied covenant of good faith and fair dealing; (2) misappropriation of confidential information and trade secrets; and (3) breach of fiduciary duty; and aiding and abetting Plaintiff's breach of fiduciary duty against Intercon. (Answer and Countercls. ¶¶ 23–45.) There is no dispute as to a material fact on any of Defendant's counterclaims.

[3] Despite being able to demonstrate that Plaintiff breached the employment agreement, Defendant does not allege any damages that it suffered as a result of Plaintiff's breach. To sufficiently allege a breach of contract claim, a party must assert "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and *(4) damages*." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (emphasis added). As Plaintiff correctly notes, (*see* Pl.'s Mem. in Supp. at 22), because Defendant is unable to demonstrate that it is entitled to any actual damages for Plaintiff's breach, it cannot support a breach of contract claim.

Defendant's remaining counterclaims are either subsumed by the contract or not based on any evidence in the record whatsoever. They are therefore dismissed.

**A. Defendant's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing is Subsumed by the Employment Agreement.**

This counterclaim is subsumed and addressed by the express terms of the contract. Indeed, Defendants admitted this during oral argument. (Tr. of Oral Arg. at 23:10–18.) Because this Court has already found that the appropriate relief for Defendant's breach of contract claim is dismissal of Plaintiff's breach of contract claim, Defendant is not entitled to further relief under this alternative—and duplicative—claim.

**B. Defendant's Counterclaim for Breach of Fiduciary Duty is Subsumed by the Employment Agreement.**

Defendant also argues that Plaintiff breached a separate fiduciary duty that he owed Defendant. While originally framing this as a claim for fiduciary duty, Defendant now specifies that this argument is a claim that Plaintiff has breached his duty by acting as a "faithless servant." Defendant seeks $73,000 in profits that Plaintiff earned outside of his work for Defendant, as well as disgorgement of his salary from Defendant. (Def.'s Mem. in Supp. at 17–19.) As Defendant described at oral argument, this claim is premised on the argument that Plaintiff "violate[d] the employment agreement such that it permeated the employee's service in its most material and substantial part." (*See* Tr. of Oral Arg. at 25:2–7; 32:18–33:1; 47:4–8.) Notably, Defendant does not argue that Plaintiff had any duty greater than simply his contractual obligation to follow the terms of the employment agreement. (*See* Def.'s Mem. in Supp. at 17–19.)

Similarly to Defendant's claim for breach of the covenant of good faith and fair dealing, this claim is subsumed by the employment agreement. A party may not succeed on a claim for breach of fiduciary duty if it is simply duplicative of a claim for breach of contract that a court has already considered and addressed. *See, e.g.*, *Bobal v. Rensselaer*, 916 F.2d 759, 763 (2d Cir. 1990); *see also*

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 156–57 (S.D.N.Y. 2018). Defendant alleges that the "main sticking point" for the parties during their contract negotiations was that Plaintiff could not work for another company, and therefore, Plaintiff's conduct constitutes more than simply a breach of contract. (Tr. of Oral Arg. at 30:11–17.) This argument, however, actually supports the opposite conclusion. The parties expected this potential issue, specifically negotiated this concern, and expressly provided for a remedy should Plaintiff violate this clause. This supports the conclusion that the remedy reflected in the parties' employment agreement for breach of the contract is the appropriate relief here. Defendant is simply seeking an alternative route to bring this claim, despite the fact that it previously negotiated how this specific breach would be handled, should it occur.

Defendant relies most substantially on *Stanley v. Skowron*. In that case, the employee had signed an employment agreement that obligated him not to violate Morgan Stanley's code of conduct, which barred, among other things, insider trading. 989 F. Supp. 2d 356, 358 (S.D.N.Y. 2013). The employee subsequently engaged in insider trading, lied to Morgan Stanley about his actions, and also lied to the SEC while under oath. *Id.* at 362–63. The court therefore found that the employee acted as a faithless servant. *Id.* at 363–64. *Skowron* is not akin to the instant action. In that case, the employee's behavior went beyond simply violating the express terms of the employment contract. Indeed, the court specifically stated that "[i]n addition to exposing Morgan Stanley to government investigations and direct financial losses, [the employee's] behavior damaged the firm's reputation, a valuable corporate asset." *Id.* at 362. Moreover, the employee's activity—including making false statements—in that case spanned several *years*, unlike Plaintiff's actions in the instant case. *Id.* Additionally, and also distinguishable from the circumstances of the instant case, the employee's actions in *Skowron* violated Morgan Stanley's code of conduct, which was

included in the employee agreement by reference. *Id.* at 358 ("Both the Offer Letter and the Sign-on Agreement require [the plaintiff] to comply with Morgan Stanley's Code of Conduct."). Here, Plaintiff and Defendant explicitly negotiated the consequences of the very specific breach for which Defendant now brings its claim. Finally, it is clear that Plaintiff's actions did not rise to the level of severity as those of the employee in *Skowron*, nor did Plaintiff's actions expose Defendant to greater potential injury or financial loss.

**C. There is no Evidence to Support Defendant's Counterclaim for Misappropriation of Confidential Information and Trade Secrets.**

Defendant summarily states that Plaintiff "use[d] . . . Confidential Information in direct competition with Defendant and/or for the benefit of SGA during his employment with Defendant." (Answer and Countercls. ¶ 12.) More specifically, Defendant asserts that Plaintiff had access to certain information during the course of his employment with Defendant, and that he provided this information to David Goss, Plaintiff's brother. (Mem. of Law in Opp'n to Pl. and Countercl. Def.'s Mot. for Summ. J., ECF No. 110 at 24–25.) Defendant alleges that David Goss "could use" this information "to compete, or assist others in competing, against ESI in a limited market space." (*Id.* at 24.) Defendant also argues that there is a dispute as to material issues of fact on this counterclaim, and therefore, this Court should not grant Plaintiff's motion for summary judgment. (*Id.* at 24–25.) Specifically, Defendant asserts that a jury must determine (1) that the information that Plaintiff allegedly shared with David Goss is considered a "trade secret" and (2) that Plaintiff impermissibly disclosed this information to David Goss. (*Id.*)

The fact that Defendant asserts that someone *might* use this information wrongfully in the future does not raise a claim of misappropriation of trade secrets. *See, e.g.*, *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49 (2d Cir. 2019) ("A plaintiff claiming misappropriation of a trade secret must prove that (1) 'it possessed a trade secret,' and (2) the trade

secret *was used by defendant* 'in breach of an agreement, confidence, or duty, or as a result of discovery by improper means.'") (emphasis added) (internal citation omitted). Even assuming, *arguendo*, that the relevant information is a "trade secret," the record is wholly devoid of any evidence that indicates that any such information was actually received and misused by *anyone* in *any* manner. Indeed, Defendant acknowledged at oral argument that this claim is premised on its concern that either (1) David Goss may wrongfully use certain information in the future, or (2) that David Goss has already wrongfully used this information. But Defendant is unable to prvide any evidence that any information was obtained or misused. (*See* Tr. of Oral Arg. at 54:8–14.) This is insufficient for a claim of misappropriation of trade secrets. Indeed, no reasonable jury could find that Plaintiff misappropriated trade secrets based on the evidence in the record—or lack thereof.

**D. Defendant's Counterclaim Against Intercon for Breach of Fiduciary Duty is Dismissed for Failure to Allege a Fiduciary Duty Owed by Plaintiff.**

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must demonstrate "(1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach." *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009). Defendant has provided no evidence or facts that would support the conclusion that Plaintiff had a fiduciary duty, or any greater obligation outside of what was explicitly agreed upon and contemplated in the employment agreement. Because the underlying claim that Plaintiff breached a fiduciary duty is unsupported and would be subsumed by the terms of the contract, Defendant cannot successfully bring a claim for aiding and abetting this alleged breach against Intercon.

## V. CONCLUSION

Plaintiff's motion for summary judgment to dismiss Defendant's counterclaims, (ECF No. 91), is GRANTED. Defendant's motion for summary judgment to dismiss Plaintiff's claim for breach of contract, (ECF No. 93), is GRANTED. Defendant's motion for summary judgement in its favor on its counterclaims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty is DENIED.

Dated: New York, New York
September 29, 2020

SO ORDERED.

GEORGE B. DANIELS
United States District Judge